IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY NAVARRO-VELEZ, : Civil No. 3:21-cv-1836
:
    Petitioner : (Judge Mariani)
:
v. :
:
WARDEN, FCI-ALLENWOOD-MEDIUM, :
:
    Respondent :

## MEMORANDUM

Presently pending before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), filed by Petitioner Anthony Navarro-Velez ("Petitioner"), a federal inmate in the custody of the Federal Bureau of Prisons ("BOP"). Petitioner contends that his due process rights were violated in the context of a disciplinary hearing held at the Federal Correctional Institution, Allenwood-Medium ("FCI-Allenwood-Medium"). (*Id.*). He seeks restoration of the forfeiture of his non-vested good conduct time. (*Id.* at pp. 9-10). For the reasons set forth below, the Court will deny the petition.

I.    Background

   A.    BOP Disciplinary Process

The BOP's disciplinary process is fully outlined in Code of Federal Regulations ("C.F.R."), Title 28, Sections 541 through 541.8. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate,

institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. *Id.* § 541.3. In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing and offer the inmate a full-time staff member to represent him at the DHO hearing. *Id.* § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to present documents and submit names of requested witnesses and have them called to testify. *Id.* § 541.8(f). The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably

available." *Id.* § 541.8(f)(2). The DHO need not call repetitive witnesses or adverse witnesses. *Id.* § 541.8(f)(3). The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." *Id.* § 541.8(e). The DHO must "consider all evidence presented during the hearing." *Id.* § 541.8(f). "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.* The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions. *Id.* § 541.8. The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed. *Id.* § 541.8(f)(2). A copy must be delivered to the inmate. *Id.*

### B. Incident Report Number 3421924

Petitioner was charged with using the e-mail system, mail, and phones to introduce narcotics into FCI-Allenwood. On August 6, 2020, Petitioner received Incident Report Number 3421924, charging him with violating Prohibited Act Code 111—introduction of drugs/alcohol, Prohibited Act Code 196—mail abuse, criminal, Prohibited Act Code 197—phone abuse, criminal, and Prohibited Act Code 199—disruptive conduct, greatest (aiding) most like 196 e-mail abuse, criminal. (Doc. 8-1, pp. 24-29, Incident Report). At the time of delivery of the Incident Report, officials advised Petitioner of his rights, including his right to

3

remain silent. (*Id.* at p. 28). Petitioner displayed a fair attitude and declined to comment about the incident. (*Id.*). On August 7, 2020, Petitioner appeared before the UDC. (*Id.* at pp. 27, 29). The UDC referred the Incident Report to the DHO due to the severity of the charges. (*Id.*).

On August 7, 2020, a staff member informed Petitioner of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (*Id.* at p. 105, Inmate Rights at Discipline Hearing). Petitioner was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (*Id.* at p. 106, Notice of Discipline Hearing before the DHO). Petitioner signed both forms, he requested representation by a staff member, but did not elect to call witnesses on his behalf. (*Id.*).

The DHO hearing convened on August 19, 2020. (*Id.* at p. 9). During the August 19, 2020 hearing, the DHO confirmed that Petitioner received advanced written notice of the charges and that he had been advised of his rights before the DHO. (*Id.*). Petitioner waived his right to a staff representative, waived his right to call witnesses, expressed an understanding of his rights before the DHO, and admitted to the charges. (*Id.* at pp. 9-10). He provided the following statement: "I'm guilty and just for the record, [ ] had nothing to do with this." (*Id.*). Petitioner cited no procedural issues and offered no additional documentary evidence. (*Id.*).

4

The DHO found sufficient evidence that Petitioner committed the Code 111 violation and Code 197 violation, after considering and relying upon the Incident Report, investigation, chain of custody log, FBI Declination Notification, photographs, SIS Reports, staff memoranda, TRU System documentation, forms issued by the UDC, and Petitioner's testimony during the hearing. (*Id.* at p. 10). The finding of guilt for the Code 111 violation resulted in disallowance of 41 days of good conduct time, loss of e-mail privileges for 2 years, loss of commissary privileges for one year, forfeiture of 100 days of non-vested good conduct time, and 60 days disciplinary segregation. (*Id.* at p. 22). The finding of guilt for the Code 197 violation resulted in loss of phone privileges for 2 years, disallowance of 41 days good conduct time, forfeiture of 100 days of non-vested good time, and 60 days disciplinary segregation. (*Id.*). The DHO cited the following reasons for imposition of the sanctions:

> NAVARRO-VELEZ[']s introduction of drugs threatened the orderly running of this facility and potentially the safety of both staff and inmates. Drugs are smuggled with the intent of future sale or personal consumption. Violent acts often follow in regard to distribution and payment. Being instrumental in the illegal drug trade while incarcerated indicates NAVARRO-VELEZ[']s desire to continue to be involved in criminal activities. Institutional drug trafficking typically compromises the inmate mail and/or telephone system and the visitation area. NAVARRO-VELEZ[']s use of his telephone privileges detracted from the intent of the Federal Bureau of Prison[']s telephone policy. The DHO finds the charge for codes 111 and 197 to warrant the Forfeiture of Non Vested Good Conduct Time in addition to the Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

(*Id.*).

At the conclusion of the hearing, the DHO provided a copy of the report to Petitioner and advised him of his appeal rights. (*Id.*).

## II. Discussion

### A. Due Process Claim

Petitioner claims that his due process rights were violated in the context of the disciplinary hearing process. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; (2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; (3) assistance in presenting a defense if the inmate is illiterate; (4) an impartial tribunal; and (5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564.

Where the due process requirements are met, the decision of the hearing examiner will be upheld if there is "some evidence" in the record to support the decision.

*Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Young*, 926 F.2d at 1402-03 (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455.

In accordance with *Hill*, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56; *see also Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the Court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause"). In concluding that the greater weight of the evidence supported a finding of guilt, the DHO considered the Incident Report, investigation, chain of custody log, FBI Declination Notification, photographs, SIS Reports, staff memoranda, TRU System documentation, forms issued by the UDC, and Petitioner's statement admitting to the charges. The DHO's reliance on such documentary evidence supports a conclusion that the decision has some basis in fact and is supported by some evidence.

Next, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Petitioner was found guilty of two 100-level, greatest severity

7

prohibited acts. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level prohibited acts:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary segregation (up to 12 months).
- D. Make monetary restitution.
- E. Monetary fine.
- F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
- G. Change housing (quarters).
- H. Remove from program and/or group activity.
- I. Loss of job.
- J. Impound inmate's personal property.
- K. Confiscate contraband.
- L. Restrict to quarters.
- M. Extra duty.

28 C.F.R. § 541.3 (Table 1).

The sanctions imposed by the DHO were consistent with the severity level of the prohibited acts and within the maximum available to the DHO.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense." *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006) (citing *Rummel v. Estelle*, 445 U.S. 263, 271-74 (1980)). Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life," may be deemed excessive. *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The penalties imposed here, loss of good conduct time, forfeiture of non-vested good conduct time, disciplinary segregation, and loss of privileges, do not work an "atypical and significant hardship" on Petitioner and do not serve to extend his confinement beyond the expected parameters of his sentence.[1] *Sandin*, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

### B. Claim Pursuant to the First Step Act

Petitioner also claims that the DHO's sanction of forfeiture of non-vested good conduct time violated the First Step Act ("FSA"). Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System ("the System"). *See* 18 U.S.C. § 3632. The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction ("EBRR") programming appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (4) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (5) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (6) determining when the inmate is ready to transfer to pre-release custody or supervised release. *See id.* § 3632(a). The FSA allows eligible inmates who successfully

---

[1] Petitioner's projected release date is August 13, 2026, via good conduct time. (Doc. 8-1, p. 6).

complete EBRRs or PAs to receive earned time credits to be applied toward time in pre-release custody or supervised release. See 18 U.S.C. § 3632(d)(4)(A).

Petitioner appears to confuse earned time credit with good time credit. The First Step Act is only applicable to new earned time credits and does not apply to good time credits. Good time credit results in an actual reduction of an inmate's sentence and is awarded for maintaining good behavior during incarceration. All incarcerated persons, other than those serving a life sentence, are eligible for good time credit. Earned time credits are awarded to inmates for successful participation in evidence-based recidivism reduction programming or productive activities. The First Step Act does not pertain to 28 C.F.R. § 541.3, which governs the DHO's right to forfeit non-vested good conduct time. Thus, Petitioner is not entitled to relief pursuant to the First Step Act.

### III. Conclusion

Based on the foregoing, the Court will deny the petition for writ of habeas corpus. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: March 22, 2022